Appellant. Mr. Schuller for the appellant. Mr. Harrington for the appellate. All right, Mr. Schuller. Mr. Schuller? Mr. Schuller? Mr. Schuller? Mr. Schuller? Madam Clerk, have we lost him? Mr. Schuller is still on the line. I am waiting for his voice to come through. Mr. Schuller? Mr. Schuller? Mr. Schuller? Something must be wrong with Mr. Schuller's line. His volume is on maximum. Mr. Harrington, are you on? Mr. Harrington, are you on? Yes, I am, Judge. I hope you can hear me. All right, hold on. And let's get Mr. Schuller. Your Honor, can you hear me now? Is this Mr. Schuller? It is, Your Honor. Oh, great. All right. Yes. Please proceed with your opening statement, if you would. And my apologies if that was a hitch on my end. May it please the Court. The parties agree that Judge McFadden correctly applied the equivalent of a summary judgment standard in ruling on Parsons' motion to compel arbitration with its former employee, Mr. Ginn. Parsons disagrees with how Judge McFadden applied that standard to the facts of record. In our view, the four distinct emails Parsons delivered to Mr. Ginn, each with the subject line, EDR, Agreement to Arbitrate, effectively gave him legally sufficient notice that if he continued his employment with Parsons, then he was bound to arbitrate any future dispute about his employment. Mr. Ginn continued his employment for many years after receiving these emails. This constitutes his assent by action to be bound by the agreement. The Court below found ambiguity in whether Mr. Ginn can be deemed to have signaled his assent on the premise that his inaction could be seen as rejecting the agreement. Not so on the facts of this case. Mr. Ginn's position is that he does not recall if he saw the emails or not. Therefore, he cannot say he intended by his inaction to reject the agreement because he claims he does not recall being aware in the first place to have an opinion. Instead, the law permits, and we contend it requires, that this circumstance be treated exactly the same as when an individual asked to be excused from a contract because he claims he didn't bother to read it. It is presumed that he did. Under the rules of receipt and deemed notice, followed by the decisions in the Seventh and Eighth Circuits cited in Parsons' briefing, the party which sends a notice by email is entitled to the presumption that the email was not just received but read, that the recipient knew its content. Mr. Ginn cites no counter-authority to these decisions, and Parsons contends they are persuasive authority. Mr. Ginn has not rebutted this presumption. He doesn't claim he chose not to read the emails and deleted them instead. His rejoinder is merely that he does not recall. Therefore, he cannot rebut, and has not rebutted, the presumption that he knew the contents of the four emails. If Mr. Ginn either knew or is presumed to have known that his continued employment constituted his assent to arbitrate his disputes, then he must be held to his agreement because he took no step to signal his dissent. Said differently, Parsons' position is that this factual circumstance aligns with this Court's recent decision in Camaro v. Mastro's Restaurant. In that case, the Court looked to the restatement second of contract, section 19 paren 2, which instructs that a party's conduct is not a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents. Here, Mr. Ginn intended to continue his employment with Parsons, and he did continue it for many years. That is an affirmative act. He knew or had reason to know that Parsons would infer from his conduct that he assented to arbitrate. Parsons expressly told him as much four times. On the flip side of the coin, Mr. Ginn took no action that signaled anything to the contrary to Parsons. All right. Let me ask you, Mr. Shuler. I'm confused about what the email said the employee had to sign. The district court said first that employees were asked, quote, to complete a certification acknowledging receipt of the agreement. Nothing about signing the agreement. But the next sentence in his order says, quote, if you do not sign the agreement to arbitrate. So did the email require them to sign two times, once to certify receipt and another to agree to the agreement? The email, Your Honor, had a click the link below embedded in it, and at that point there would be an electronic signature on the agreement to arbitrate. Okay. The language, the email states, click here to complete the certification agreement to arbitrate. That's kind of garbled language. And then if you do not sign the agreement to arbitrate, which I assume is the same as completing the certification agreement to arbitrate. Is that right? Well, Your Honor, just for clarity, if you go two paragraphs down, it says please click the link below to review the EDR problem-solving booklet and sign the certification. Okay. Right. One certification. Okay. Thank you. Judge Garland. Yes. The mailbox rule, at least in the D.C. Court of Appeals, is only a rule about having received the document. It doesn't say that it's presumed that you will have read the document. Do you have a different case? I'm thinking about Kidd v. Prince, where the court states the common law rule, creates a rebuttal presumption that a letter has been delivered to the addressee. There's no presumption that it's been read, is there? Not in case law to date in this circuit. I agree, Your Honor. All right. And in the Supreme Court, in the Suleyman case, the court said that a plaintiff who didn't remember reviewing certain disclosures and, therefore, this is an ERISA case, lacked actual knowledge of a fiduciary breach. It wasn't enough that he got the disclosures. He had to have actual knowledge, and his affidavit that he didn't read the material was enough to show that he didn't have actual knowledge. So why here doesn't this create a question of material fact, a disputed question? There's nothing in D.C. law that says notice is enough. And this is a contracts question in D.C. law. You have to have knowledge. And he says, I didn't have knowledge. I understand your argument, or an argument, that at the next phase, either jury or judge fact deciding, somebody will decide whether that decision is right or not, whether that claim is credible or not. But at this stage, all we have through the mailbox rule is he got notice. And that seems pretty obvious. I don't think they're even disputing that it was delivered to his mailbox. So, Your Honor, the answer is that we think that the logic of those Seventh and Eighth Circuit cases, which I will concede were not contract cases, but they were notice cases, are that if somebody is in a setting in which it would be expected for them to read the document, and these were work e-mails delivered by Mr. Jinn's employer to his work e-mailbox, it was his job to be aware of them and not to ignore them. Yes, but the question here, this is a question only of D.C. law, District of Columbia law, not the law in the Seventh Circuit or any other circuit or even in our own circuit. The only question is what is the law of the District of Columbia on this question? Well, I don't think that the District of Columbia Court of Appeals has addressed the follow-on question of whether in a work setting like this there should be a presumption that the person not only received the document but was aware of its contents in the same way that we presume that someone is aware of a contract once they've signed it. Well, once they've signed it, I'm sorry, I'm not really following that. Yes, of course, if they sign it, that's evidence that they read it, pretty good evidence that they read it. What D.C. case are you relying on for that, Beth? I apologize, Your Honor, I do not, it's not coming directly to mind. It was in our opening brief. Well, I'll give you a chance to think about it and you can tell me again on rebuttal. Thank you. All right. Thank you, Judge Henderson. All right, Judge Piller. Good morning, Mr. Shuler. My question is about whether the appeal is proper here, and I realize that it may not be your fault that it comes up here, but my understanding under non-USC Section 4 and Section 16 is that the district court, if there's a material issue of disputed fact as to whether there is an agreement to arbitrate, the district court should then, under the Federal Arbitration Act, hold a mini-trial, a threshold trial, whether by jury or bench, depending on the opposing party's request, to resolve that material issue of disputed fact, and that didn't happen here. And I know that your briefing has said, yeah, that at least we should go back for that to happen. What did you do to bring that sort of half-baked character of the determination to the district court's attention before appealing? Your Honor, this is not to cast dispersion on anyone. I was local counsel, if you will, at that point in the proceeding. My colleague who was lead counsel is now deceased, and what happened was we did both, but we filed the notice of appeal before we filed the request with the district judge to reconsider his decision and hold a mini-trial, and at that point, Judge McFadden, I think, correctly said, it's too late. You're already in the court of appeals. But you would agree with me that the district court hasn't finally determined the question whether there is an agreement to arbitrate. In other words, hasn't finally denied your petition under Section 4 to send this case to arbitration, because he hasn't ruled on the open issue of material fact. I agree with that, Your Honor. And part of our argument, as you will know from the briefing, is that we think on the record of the case, this court can make that determination because it becomes a question of law, not a question of fact. But if the fact question is open, then yes, it was not determined by Judge McFadden because he said it was a fact that could only be determined after trial on the merits, rather than through the summary judgment proceeding. Right. So if we were to disagree with you that it's a question of law in the sense that the facts of record that you have presented would suffice to support Mr. Ginn's agreement to arbitrate, if we were to disagree with you on that and agree with the district court that there's a disputed issue of material fact going to that, then basically we don't have collateral order review under Section 16, and we should say we should just remand for that reason. Your Honor, yes, I think that would be the proper application of the interplay between 16 and 4. Thank you. Wait, can I interrupt for just one second? So your understanding here is that the district court essentially denied you summary judgment, is that right? Yes, Your Honor. Whether on the law or on the facts? Yes, Your Honor. Is a denial of summary judgment, even if the judge denied it to you on the law, would that be appealable? Your Honor, the effect of his denying a summary judgment was that the case was going to continue to trial. To trial on the question of whether there was an agreement to arbitrate, right? As well as the balance, because Judge McFadden at that point had everything consolidated in one package. No, but did he, I'm confused. It says in his opinion, it says a jury may credit persons' evidence and discredit Mr. Ginn's sworn declaration, but for now there's a genuine factual dispute. So wouldn't that mean that the first stage, the next stage has to be, I'm just following up on Judge Pillar's view, question, the next stage has to be a decision about whether there is an agreement to arbitrate or not. I agree, Your Honor. So then what is the answer, if there is any answer to her question, why are we here? We're here, Your Honor, because Parsons filed an interlocutory appeal on the belief that it was Judge McFadden's position that we were going to proceed to an initial scheduling conference for the entirety of the case and that the question of arbitrability was going to be rolled into a trial on the merits of everything. Okay, I understand. Where do I find, I hadn't noticed that point in his opinion. Is there something, is there an order that says that, that both the, I mean, what if the, I don't understand how it could be put into one, if the jury decided that there was an agreement to arbitrate, that would be the end, wouldn't it? Even, you're not suggesting that the judge thought that he would continue on with the merits of the case even if the jury said there wasn't, there was an agreement to arbitrate? I assume not, Judge Carlin. All right, so is there something that said that he was going to have a joint trial? Is that what you're saying, that he said we're going to go forward into a joint trial on both questions at the same time? That was how I believe the parties understood his position subsequent to the notice of appeal being filed when there was a review of Parsons' admittedly belated request to him to hold the Section 4 trial. And he said, I don't think I can do that now because the case is now out of my hands. He suggested to the parties that perhaps we could resolve this by agreeing to dismiss the appeal and proceed to a Section 4 trial, and the parties could not come to agreement on that. I'll let Mr. Harrington speak to that if his recollection is different. And you, Mr., oh, I'm sorry, go ahead, Judge Carlin. Just to be, just to nail this down, you can't point to anything in the record, either a status conference or an order in which the judge said he was going to combine the two? There isn't anything explicit to say that, that I recall, Your Honor. Well, but, I mean, he does then require an answer to the complaint, and he does actually in the order that's before us on appeal deny motion to stay proceedings and compel arbitration rather than move on to the next phase in resolving the motion to stay proceedings and compel arbitration. So I think there is some basis in the record other than what I gather is counsel's mutual understanding to show the judge proceeding forward on the merits. Well, let me ask a question. I thought, Mr. Shuler, that you filed a motion for reconsideration. Did I mishear that? No, Your Honor, we did file that motion, but we filed it after filing the notice of appeal. I understand, and what was his ruling? He denied it without any explanation, or did he deny it and say... He denied it for lack of jurisdiction. All right, okay. The docket shows it having been filed on the same day, the motion for reconsideration and the notice of appeal, but you're, and in fact the motion for reconsideration appears on the docket before, but it actually was submitted after and the judge took it to be belated for jurisdictional purposes? Yes, Your Honor. I have a question that may not be ultimately material, but it struck me that the person's policy tells employees that continued employment after the effective date of the agreement to arbitrate, or the new arbitration policy, the effective date, I gather, was some weeks even before the emails were sent to employees. So you wouldn't dispute that continuing to work after the effective date, but before the employee was aware that they were being asked to agree to an agreement to arbitrate, that that would not be enforceable in any way? Correct, Your Honor. And just in terms of the sequencing from Parson's perspective, the effective date was an amendment to an existing ADR program with an agreement to arbitrate. So there was one in place. This agreement to arbitrate was actually an amended agreement. But if you hadn't failed to show that this employee had ever agreed to the underlying, which I gather you're not claiming that he had agreed to the underlying 1998 policy, then that – go ahead. Correct, Your Honor. Parson's was on paper records at that point in time, and to date Mr. Ginn's records from that point in time have, to the extent that they still exist, have not disclosed his agreement to arbitrate under a prior program. I have also just a technical question. I mean, I know parties that are trying to update their contracts in the digital world have sometimes a tough time getting counterparties to respond. But one thing that I see in incoming e-mails sometimes is that when you open an e-mail, it requires the sender to get a receipt showing you opened and read it. But that wasn't something that was used by Parson's in this instance. Am I right? That is my understanding, Your Honor. All right. Let's hear from – I've lost my sheet here. Mr. Harrington. And we'll give you a couple minutes, Mr. Shuler, in reply. So, Mr. Harrington, are you still there? I am, and thank you, Your Honor, and may it please the Court. Can you hear me okay? I can, yes. Okay. The district court correctly held that Parson's had not met its burden applying a summary judgment standard to demonstrate that there was a valid and enforceable agreement or contract between it and Mr. Ginn to arbitrate any employment claims. Under D.C. contract law principles and the circuit's interpretation of that law, there must be a meeting of the minds as to all material terms, and the parties sought to be bound to an agreement must have taken some affirmative step to manifest an intent to be bound, and that intention to be bound must be closely examined. And this Court's holdings have held that continued employment is insufficient in and of itself to manifest acceptance, and that holding was affirmed as recently as March 17, 2020, in the decision in Camara v. Mastro's Restaurants. It's undisputed that Mr. Ginn did not sign the arbitration agreement, and he provided a sworn declaration, a sworn affidavit, that he had no recollection of receiving the emails and also that he had never reviewed the agreement prior to Parson's motion to compel arbitration in this matter. Does it matter, Mr. Harrington, that this was an at-will employment? No, Your Honor. In terms of whether there's an enforceable contract, the fact that it's at-will employment is, in our view, not relevant. Again, Mr. Ginn provided that sworn affidavit attesting to not having reviewed the agreement. He also filed EEO charges, which obviously is not foreclosed by the agreement, but it was an additional indication, as Mr. Ginn said in his sworn declaration, that he had no knowledge of the arbitration agreement. And he also, in his sworn affidavit, said that he never meant to do anything to signal an intent to be bound by the agreement. And certainly his declaration is admissible evidence in Kamara, this court directly. I'm just probing the extent to which you can rely on Bailey, because there we emphasize that under D.C. law, it was significant that the employer had disclaimed any authority or intention to fire an employee who rejected the arbitration agreement. And in light of those facts, we held that the employee's continued employment could not constitute acceptance. But here it seems to be agreed that Parsons could have fired Mr. Ginn, given that he was at-will, if it had realized that Mr. Ginn had rejected the arbitration agreement. Does that distinguish this case from Bailey? Well, certainly this court did find that that was an important fact in Bailey, but it's certainly not something, you know, a party is not required to affirmatively reject an agreement. There must be some step taken to manifest an intent to be bound. And certainly in this case, there's no evidence that any manager- I'm getting feedback here. Apologies. I don't know if anyone else is getting feedback as well. No, I heard some there for a moment, but it seems to be better. Okay. But again, if you look at Kamara, Judge, on March 17th, in that instance the defendant seeking to compel arbitration submitted a general manager's affidavit that he had personally presented agreements and obtained signatures from employees and an HR director's affidavit that a database tracking whether employees had signed the agreement had, in fact, been updated at some point to indicate that Mr. Kamara had signed the agreement. But given Mr. Kamara's sworn declaration that he hadn't seen the agreement, hadn't signed it or agreed to its terms, and also the fact that there was no evidence that a manager or co-worker had discussed the agreement with him, this court found that there was not sufficient manifestation of any intent on the part of Mr. Kamara to be bound, and his continued employment was insufficient. Mr. Harrington, I- Sorry to interrupt. No, go ahead. I have the same question for you that I had for Mr. Shuler about whether this appeal was properly before us, and you had filed a submission last week saying that you would limit your argument and not address whether this district court erred in not going to an evidentiary hearing, and I'm just confused what your position is on that. Arguably, the district court, as I mentioned, only got to the point of identifying an issue of material fact, material to whether or not there's an arbitration agreement, and I understand that your first-line position, like Parson's first-line position, is that on the existing record, actually, there isn't a material dispute of fact because on undisputed facts, you prevail as a matter of law, but assuming, you know, the same assumption that I asked Mr. Shuler, assuming that we disagree, assuming that there is a genuine material dispute of fact, why wouldn't the right answer be, this is not right for our collateral review, send it back and get the district judge to finish deciding whether there's an agreement to arbitrate? I think that is the right answer, Judge, and I apologize for our late notice that we were conceding that issue and did not intend to argue it today. You know, I'm not sure procedurally if we'd been in a different position at the outset and the district court still believed it had jurisdiction, you know, to hold a bench trial or jury trial to resolve these disputed facts, whether we would have approached it differently, but we do concede at this point that there should be a bench trial by the district court judge to resolve it. Limited to the question of the existence of an arbitration agreement. And do you share Mr. Shuler's understanding that at least at first the district judge wasn't appreciating that and was going to roll the resolution of the factual disputes on an agreement to arbitrate into resolution of the merits and have one trial, and that was part of the confusion? Was that also your understanding? I do think that the fair reading of the judge's order, it was simply silent in terms of whether there should be any kind of hearing, whether a bench trial or a jury trial to resolve what the judge said were the disputed facts. Which, can I just interrupt again, which order are you referring to? The judge's memorandum order denying the motion to compel on January 29th, 2019. But that says a jury may credit Parsons' evidence and credit Mr. Ginn's sworn declaration, but for now there is a genuine factual dispute. Well, I appreciate it, Judge. I appreciate you pointing that out. Now that you say it, I recall that you made the same comment a few minutes ago, and I guess that could be read as a recognition by the judge that there should be some sort of jury or bench trial to resolve the facts. But there was nothing explicit in the order directing that that happened. Well, then I guess let me just repeat the question I had before. Isn't this just not within our jurisdiction? This is an interlocutory appeal of a denial of summary judgment, which we do not have jurisdiction to review because it's not a final decision, and that's the end of it. Nothing more actually can be said. I didn't hear what you said. What? Nothing more actually can be said. This is an interlocutory appeal from a denial of summary judgment, which is a non-final decision over which we don't have jurisdiction, period. We can't opine on anything. Is that wrong or right? That's all I'm testing now. Well, certainly I believe that that could be a supportable decision, Judge. I mean, the fact is just because, as Mr. Shuler explained, the timing of Parsons' appeal here, the district court said that it had been divested of jurisdiction, certainly I think had the appeal not been filed, these disputed facts should have been resolved at the district court level. And whether this court should now opine on some of the underlying contract law principles in terms of whether continued employment is or is not sufficient to manifest acceptance, I would leave that to your honors to decide. But certainly we think it would be appropriate to have the district court hold a bench trial to resolve these disputed facts. You just referred to a bench trial. You requested a jury trial on the underlying merits? On the underlying merits, correct. But you're saying you would basically waive your right to a jury trial on the threshold question, whether there is an agreement to arbitrate? We would. But our understanding of the Federal Arbitration Act is that only the party alleged to be in default in terms of the agreement may demand a jury trial. Which is your client, right? Correct. And our choice would be a bench trial in this instance. Uh-huh. Well, that's helpful. All right. Judge Garland, Judge Hiller, do you have any more questions? None for me, thanks. Judge Garland? None for me. No, thank you. All right. Thank you, Mr. Harrington. And Mr. Shuler, with respect to rebuttal, I at least would like to hear you say whether or not you agree with Mr. Harrington on the resolution of this case, and if so, then that will be the end. Meaning, Your Honor, just so that I am clear in whether if the case is remanded for the bench trial, that resolves things? Well, as far as our court, yes. Understood, Your Honor. Yeah, I meant jurisdiction. Yes, Your Honor, I would agree with that. All right. Then I think, unless my colleagues have any other questions, I want to thank counsel and ask the clerk to call the next case. Your Honor, just for my sake as a professional, I would like to say to Judge Garland that I was incorrect in remembering that we had cited a case in our appellate briefs on a party being bound by an agreement, even if he hasn't read it. That was actually in our briefing to the court below and was recited by the district court. So I apologize for my misrecollection. Thank you, Your Honors. No problem. There's lots of cases to remember. I can barely do it myself. Thank you. All right, Madam Clerk.
judges: Henderson, Garland, Pillard